OES, OES, OES, the Honorable Public Health District District State Illinois Sound Section. Please be seated. Good morning, Council. Good morning. Before we get started today, I just want to take a moment and recognize our newest member of our court, Justice Mark Clark, from the First Judicial Circuit. He's been with us for a few weeks, but this is his first day here for oral argument. And we're glad to have him. When I got elected trial judge, I hate to admit, 25 years ago, I was fortunate enough to have about 20 other judges in the First Circuit that were completely outstanding and great mentors. I was thankful Justice Clark was one of those and has been a great help and mentor to me and several of the other judges that have come along through the First Judicial Circuit. We are very happy to have him. He is going to be an outstanding asset to this court. We look forward to serving with him for the next two to three years. Thank you. Welcome. With that being said, our first case today is 525-0208, ACA, Illinois Tier 1 Student Housing District v. Larson Company, LLC, et al. I believe we've got three. Three are going to argue on behalf of the Applelees, and I just want to make sure I've got this right. Mr. Schmidt is going to go first. Yes, sir. Okay. Is it Mr. Schuchas? Yes. Number two, and then Mr. Fetterman bringing up the rear. That's right. All right. I think we've got five minutes apiece. I'll try to watch time. We'll try to watch time, but if you could help us with that, that would be greatly appreciated. Howard, are you ready to proceed? Yes. You're here by yourself. You think you've got this? I've got the top number. Okay. All right. Then go right ahead. Good morning, and may it please the court. I am Mark Rabinowitz. I represent the plaintiff, ACA Illinois Tier 1 Student Housing DST, which is Delaware Statutory Trust. As the court knows, the trial court dismissed with prejudice seven of the eight claims that the plaintiff brought against the three defendants arising out of substantial construction defects in a six-story residential building with 111 units and 428 beds in Champaign, Illinois, student housing for University of Illinois students. The court dismissed. We had eight counts. The court dismissed in Champaign County seven of the eight counts with prejudice. It was a fraud claim that it upheld against the developers, Larson Company and XFD, but it dismissed seven of the eight claims. All but one of those, the negligence claim, all the other claims are warranty claims based on a 1981 Fourth District appellate court case that was issued prior to the redistricting in 2022, and the trial court indicated that it felt constrained to apply that case, and that case was Hopkins v. Hartman, and that case occupied the large section of our briefing, of the party's briefing. The trial court said it felt constrained to apply that case because it had never been overruled, and absent guidance from a higher court, it felt constrained to not apply any of any, interpret any further exceptions to the doctrine of caveat emptor. We are here this morning, I am here this morning, asking this court to clarify that the trial court's reliance on that opinion was misplaced for several reasons. First, it cited no authority. It's a 44-year-old case. It's distinguishable and completely inapposite, and the trial court clearly felt hesitant, but nonetheless felt constrained to apply that case to our situation. So in Hopkins, it dealt only with the implied warranty of habitability, but Justice Dyer in Champaign applied it to all of our claims for the implied warranty of habitability, the implied warranty of good workmanship against the builder, and the implied warranty of reasonable judgment against the architect, KAP architecture. But the case is completely distinguishable, and we contend that it is inapposite to this case, and Justice Dyer should not have applied it. The case held in Hopkins v. Hartman that the implied warranty of habitability did not apply to income-producing property. It was limited to residential property in which the buyer personally resided, and the rationale, the express rationale, the court explains it very clearly, is that an investor in income-producing property has the ability to discover, through inspection and the retention of experts, any kind of defect, including latent defects. And so therefore, the implied warranty of habitability should not apply to income-producing property. However, in that case, there were extensive construction defects that were perfectly apparent at the time of the purchase. So this was not dealing with latent defects. The entire rationale of the case was unjustified because all the defects are described in detail in that opinion, which in all the evidence that was apparent at the time, and the court did not need to, there was no right reason for the court to have that holding. It has been criticized, never applied since 1981 in Illinois. It's been criticized by other courts. There's still other courts that have agreed with it, but there's one case in particular that we cited, the Tush case, T-U-S-C-H, out of the Idaho Supreme Court, which explained that the warranty of habitability, the guarantee by a builder or developer that the building will be fit for habitability, does not depend on whether it's being purchased by someone who's going to reside there. And that was, of course, the origin of the doctrine in the Peterson and Redero's cases. But it has since been expanded to all kinds of other situations, including subsequent purchasers, such as we are. And are there any cases that have removed the privity requirement specifically for good workmanship? For good workmanship? Yes. For good workmanship, we have cited two cases. They're not Illinois or Gulf of Guatemala, where the court stated that it was clear that by operation of law, the warranty should apply and be enforceable by subsequent purchasers. Not in Illinois. So we are asking the court, good question, Justice Swan, we are asking the court to extend Illinois law because it is very, there's a dearth of authority on interpreting these implied warranties and whether they can be applied by a subsequent purchaser. So we are asking this court to fill in the gaps in the judicial record. Why should we do that instead of letting the legislature take action to fix this or leaving it to the Supreme Court to fix this? Excellent question. Our position is that the implied warranties are judicial doctrines. These are not, none of these are statutes. These are all a creature of judicial interpretation. The Peterson case and the Ruderowitz, which developed the doctrines of the implied warranties. And so I submit that the legislature is not the appropriate source of the details of these doctrines. These are traditionally developed doctrines. The Illinois Supreme Court does not address one way or another the points that we're raising in this case. And the only way that this Illinois Supreme Court can get there, as the court knows, is for a case to reach it. Perhaps this will be the one. But my, the plaintiff's position is that these, the application of these doctrines when there's extensive Illinois law, that particularly the doctrine of good workmanship, implied warranty of good workmanship, it's extensively described and established in Illinois case law. The nuances of whether it should be applied to allow a subsequent purchaser to enforce it, there's no authority either way. But you may say these defects were not latent defects. I mean, they were obviously apparent or readily apparent. Ours or in Hopkins? Yours. Oh, ours are totally latent. So as the complaint explains, this is a, it's got 400 beds. It takes up an entire block in Champaign. The roof of the building, this is brand new construction. The roof of the building had no attic ventilation. I read the brief that there was mold in the, there's not a water or vapor barrier or something along that line. Correct. That's correct, Your Honor. And they completely filled, completely to the deck, to the roof deck. They completely filled it with insulation. So it rotted. It developed mold, and the mold spread to the units. The developers, before they sold it to our client, my client, painted over it, and there were specific questions about a moisture problem, no problem, nothing, no repairs to be made, it said. And I apologize because we have several cases, and I'm having trouble thinking in my mind, but what was the one count that was not dismissed? Fraudulent concealment against the developer. And that's for the painting over? And failure to disclose. Correct. This, it took, it cost $3.5 million to replace the entire roof on a building that was a couple years old. That's why we're here. And we contend that there are remedies against the developers, which Justice Steyer is allowing us to pursue in the fraud context. But we believe there are implied warranty remedies against all of the defendants. And the count that remains is the person, the other defendant, are there multiple defendants, or who's the defendant, and the count that remains? The count that remains is the two developers, Larson Company and XFD, LLC. They are here today on the implied warranty account, implied warranty of habitability account, which is swept up in the others. But they survived. Our claim against them, the two developers, Larson Company and XFD, survives in the trial. Is it a sign of bringing in third-party defendants, bringing in the developers, going to bring in the subcontractors, the subcontractors going to bring in the contractor, the contractors going to bring in the architect? I mean, are we going to get right back to where? Excellent question. That has not happened yet. The pleadings are at, we're at the stage where I would, well, they filed motions to dismiss. So I suppose were the case to be remanded to the trial court, that could happen. But we don't know. And certainly the plaintiffs can't count on that happening. And so at this juncture, certainly, the plaintiff is looking to this court to allow them to pursue. The plaintiff defendants are clear remedies against these other parties. The developers contracted with the architect and the contractor. They say, oh, there's no doubt that they are responsible, directly responsible for the major construction defects, $3.5 million to replace a couple-year-old roof on this gigantic building. And they want to get out because we're a subsequent purchaser. And there's no case clearly stating that we can enforce these implied warranties against them. There's no case saying we can't. And we're asking the courts to interpret these judicial doctrines. These are not statutes. Judicial doctrines to allow the plaintiff to pursue its remedies. And we submit that we will be able to establish liability, clearly. These were the architect's plans called for, the filling of the entire attic space with this insulation and zero ventilation whatsoever. And that's well known in the construction industry. You're going to get moisture. You're going to get mold. And that's what happened. And the entire roof and the tenants, the appellees, had their inspectors, and we alleged this in the complaint, out on the site. And they admit their inspection reports. They admit that's exactly what happened. The plaintiff didn't construct this. The developers weren't on site. They didn't design it. They didn't construct it. But they knew of the problems and failed to disclose it. But it was the contractor and the architect that designed and constructed a patently faulty building. And under Illinois law, we submit that we are entitled to pursue our remedy against all the defendants, including under implied warranties of habitability, good workmanship, and reasonable judgment or specifications against the architect. The nuances of the cases are explained at length in our briefs. In addition, we had a negligence claim against the architect. The trial court dismissed that as well under the Mormon economic loss doctrine. And we get, based on the 2314 Lincoln Park case, where the Illinois Supreme Court held that, excuse me, that the Mormon doctrine borrows claims against architects because the client can contract for any terms that it needs to. However, four years later in the Congregation of the Passion case, the Illinois Supreme Court held that in the context of an accountant, the Mormon doctrine does not apply to a professional malpractice claim in negligence if there are extra contractual duties. And Justice Freeman explained in his concurrence that that clearly overruled the 2314 Lincoln Park case. So on that basis and several others that are explained in our brief, including that we do not have an adequate remedy at law for the architect's negligence, under Ferenczak, there has to be an adequate contractual remedy. While this is explained at length in our briefs, we contend that Justice Steyer erred out of a sense of caution because he was looking for guidance from this court. And in particular, this is the Fifth District. The Hopkins v. Hartman case was a Fourth District case 44 years ago prior to redistricting. And we are asking this court to hold, to either overrule it or to construe it narrowly as to not apply in this case. I want to go to what you just said there and some said earlier about, you know, very little case law out there on the issue. And I don't disagree with that. But the Appalachian Psychist Board of Directors of Bloomfield Club Recreation Association v. Hoffman Group, which was a 1998 case that basically said that Hopkins was well-settled law and well-decided. Well, Bloomfield described it. It did not say. I don't believe that it held that it did not help. I believe it just summarized it. Okay. I didn't think there was an express ruling. Mr. Spohn, do you have any questions? No other questions. Thank you, Clark. No, thank you. All right. I'd ask that you have your time to rebut. Thank you very much. Go right ahead. Good morning, Your Honor. Counsel. May it please the Court. My name is James Schmidt, and I represent Larson Companies LLC and XFD LLC. I'm going to argue to the Court why the warranty of habitability just does not apply in this case. I'm going to be followed by Mr. Shookus and Federman, who are going to talk about the other issues in this matter. Your Honor, the trial court properly dismissed the counts that it did dismiss, including counts two and four, which were expressly related to the warranty of habitability, and the other counts that relied on the warranty of habitability. I wasn't going to say trial counsel. I didn't argue this matter before the trial court, so I didn't hear its rulings, and I don't know its impressions. But I don't get the impression from the order that the trial court felt constrained by this decision or that it was looking for guidance. Rather, it relied on a 44-year-old undisturbed case, Hopkins v. Hartman. And there are three reasons, Your Honors, why this court should do the same, and it should rule consistently with that. Number one, that is a sensical, well-reasoned opinion that is based on the holding of Peterson v. Hubschman, the Illinois Supreme Court case that established the warranty of habitability in Illinois. Number two, its longstanding precedent, which, as the Court just noted, has been relied on by other cases, including the Bloomfield Hills case, as well as litigants and trial courts across the state, for the proposition for which it stands. Number three, the Illinois Supreme Court could have overruled that case when it examined Bloomfield Hills, and it chose not to do so, implicitly affirming it. And there are some questions to this effect, but I believe the Hopkins decision really is on point here. The Court was looking at the same question that we're looking at here. There was a question of whether there was an adequate ventilation, and whether that ventilation caused extraordinary moisture or an unacceptable level of moisture. Now, the Hopkins matter was looking at a basement and adequate ventilation there, whereas here we're looking at whether or not there was adequate ventilation for an attic. But the question that the Court decided in Hopkins, and I believe the plaintiff has argued that this was just dicta, and I disagree with that. The question, and I'll quote from Hopkins, the question there was, whether the doctrine of Peterson should be extended to commercial properties never occupied by the owners, end quote. That was the question it was looking at. And that's the same question that the Court's looking at here today. The answer in Hopkins was no, and the answer today should be no. Are you familiar with the Kelly v. Astor investors case? I don't recall that one, no, Your Honor. But there's good reason why this Court should rule consistently with Hopkins. And the reason is because the warranty of habitability established by the Illinois Supreme Court in Peterson arose initially out of that same warranty of habitability for tenants of buildings. And so the Peterson case limits the warranty of habitability to unsophisticated home buyers who are making a large investment in a personal residence. They're going to live there, just like the residential tenants were going to live in the properties that they were occupying. Here, the plaintiff is not an unsophisticated buyer. It's a group of 81 investors with an average investment of $273,000 each. That's from the plaintiff's supply brief. That is a far cry, Your Honors, from a home buyer who's looking to move his family into a home, which is what was at issue in Peterson. Just like in Hopkins, the plaintiff here had plenty of chance to get an inspection prior to making the purchase. It did get an inspection. Just like in Hopkins, it could have gotten a second opinion on that inspection. And I would submit to the Court that a lack of roof vents should be evident to an experienced inspector. Even if they can't get into the attic, the fact that there are or are not roof vents should be something that an inspector should notice. I believe there was some argument that there was no latent defects at issue in Hopkins. And I don't believe that was the case. I believe they were argued to be latent defects. But if not, the warranty of habitability wouldn't apply, because the warranty of habitability only deals with latent defects. And again, just like in Hopkins here, Your Honor, the plaintiff had no issue getting an inspection once it got ready for litigation. It should have gotten that second opinion before it purchased the property. It failed to do so. And just like in Hopkins, this Court should find that the warranty of habitability does not apply to investors. Your Honor, even if the Court gets past that, the one thing I did want to note was the builder's argument, Brewer and Russo's arguments that the warranty of habitability would not apply back to a builder who was not in the chain of title. In this matter, ACA, the plaintiff, is not a successive purchaser to the builder, because the builder was never an owner. It didn't have a chain of title. It was not in the chain of title because it never actually owned the property. Rather, it was who built the property. And so, Your Honor, I will rest on that issue and defer to my colleagues for the rest of the day. Any questions of Justice Clark? No, thank you. That's all. No other questions. Thank you. Thank you, Your Honor. This Court, Eric Tsoukas, on behalf of the builder Brewer and Russo, I'm going to be talking to you about the implied warranty of good workmanship. The Appellant's Counsel misspoke. He mentioned that there were substantial construction defects. There were none alleged in the complaint. In fact, he alleged, excuse me, the plaintiff alleged that the builder actually carried out their work in a good and working-like manner. They followed the plans, and that's the point here. We follow the plans. And we have a contract that specifies what the warranty is going to include. We cited that in our brief. It's pretty straightforward. Our work defines the contract documents. What do the contract documents include? They include the design and specifications, and then the next provision in that same section, I think it's 3.5, turns to, okay, well, what is the warranty going to include? The warranty is going to be regarding the labor, the materials, the equipment, and the services to bring about construction of that building. And it specifically says there's going to be no warranty regarding anything inherent in the construction and the contract documents. So the builder is expressly stating, I am going to build this, and I am going to construct it just like as it's designed, but just to be clear, I'm not giving you a warranty as to the specifications or the design documents or anything that might be inherently wrong with those. And so this is what this case is about. Council mentioned, you know, after construction, there's an issue with the attic space, and it turns out that it's strictly a design issue. And we cited in our brief the many cases that hold that when the architect, excuse me, the contractor follows the plans, that's a defense. And our warranty in our contract simply aligns with Illinois law. So it's pretty straightforward. Kind of turning back to our first implied warranty workmanship argument, Your Honor noted, there are cases regarding a subsequent purchaser who's not in privity to be able to enforce a warranty. But I would suggest or argue that it's very simple. It might be mispronouncing. It's the Althabove decision. The Supreme Court says we just start with what the contract says, because the implied warranty good workmanship, it comes out of, and it's something that's implied in a contract. It's a breach of contract action. So it starts and ends with what's in the contract, and Althabove says, we look at what the contract says and what rights third parties have against the builder. And what was not appealed by the developer, excuse me, the purchaser here, was the trial court's decision that our contract with the developer specifically states, it includes a provision that says there's going to be no contractual relationship between anybody, excuse me, with the builder except anybody but the developer. So the trial court ruled there are no third parties. End of inquiry. One last point, the issue regarding these being patently obvious defects, that is a sly suggestion that somehow that's the argument that is being raised for the first time on appeal, that somehow that these were obvious defects and we should have caught them. There's nothing below, but even so, there's nothing in the allegations that suggests there was anything unreasonably dangerous or obvious per the Hunt Doctrine that we should have caught it. So I have your time. Any questions? This is Bob. No questions. How do you think, Bob? No, thank you. May it please the Court, my name is Jonathan Fetterman. I represent KAP Architecture, LLC. We ask that this Court affirm the trial court's decision dismissing ACA's claims against KAP. As my colleagues have already addressed the implied warranty affidavility, I'll focus on so-called warranty specifications or reasonable judgment, as well as the Mormon doctrine issues related to KAP. Turning to the implied warranty specifications, it simply does not exist in Illinois as ACA claims. While Illinois recognizes an implied warranty of specifications pursuant to the Spearing Doctrine, that is totally inapplicable because the Spearing Doctrine is essentially a contractor who follows the designs given by the owner will not bear liability. Here, ACA is seeking liability against the architect firm. The Spearing Doctrine has no application. The other cases that ACA relies upon in support of the so-called implied warranty expressly deal with either the implied warranty of affidavility and the contract between the architect and the entity in privity with the architect because it is the contract that creates the duty, which ironically enough is exactly what ACA alleges in its complaint, and that's on the record at C40. Simply put, there is no implied warranty of reasonable judgment or specification that has ever been recognized in Illinois. And contrary to ACA's claim in its rebuttal brief, it is not KAP's duty to disprove that. It is ACA's duty to demonstrate it has a valid cause of action. There is no case authority that supports ACA's claim, and therefore we ask this Court to affirm the dismissal of the implied warranty of specifications or reasonable judgment as ACA is now referring to it. Unless there are any questions on this issue, I'll turn to the morning doctrine issues. This is Bob. The Sienna case covers two, as I read, covers two issues. One is a reasonable judgment issue, and the other is a professional negligence issue. But the Sienna case requires privity in either case. Is that accurate? I believe it does require privity, Your Honor, and that's the whole point, which will get to actually the Mormon doctrine position. What the Illinois Supreme Court has effectively done is held that architects must be held liable in contract with a few exceptions that are not applicable in this case. So there is a requirement of privity of contract, and that's exactly what the Mississippi Meadows and the Board of Managers of Park Point both expressly dealt with, that in both of those cases there was privity of contract, while the Board of Managers of Park Point also specifically dealt with the implied warranty of abitability. There's simply no case that has addressed an implied warranty of reasonable judgment or specifications, and it's just as wrong as you recognized earlier. It's the Illinois legislature's role to create new causes of action, not the Court's. So we ask that if this is a cause of action that the legislature wants to create, they can do so. Thank you. Turning to the Mormon doctrine issue, ACMA's entire argument is premised on the idea that a concurring justice can somehow overturn prior precedent. That is not how a concurrence works. The issue as to whether or not an architect may be liable in negligence has been resoundingly addressed, and that was in 2314 Lincoln Park. The Illinois Supreme Court has spoken on the issue, and it has not reversed itself. A few years later, in Congregation of Compassion, the Illinois Supreme Court declined to extend the reasoning from Lincoln Park, but it did not overturn it. Instead, the Illinois Supreme Court created a framework to identify the distinction. It's the tangible versus intangible dichotomy test. Contrary to ACMA's position, the concurring justice had no authority to overturn majority opinion or the previous opinion in 2314 Lincoln Park. There is no authority that supports that a concurring justice can create, excuse me, overturn prior precedent. Turning to the adequate remedy argument, ACMA relies on one decision, Ferenczak, which did state that a lack of an adequate remedy is an exception to the Mormon doctrine. But two years after Ferenczak, the Illinois Supreme Court has once again ruled, in an Anderson electorate, how the Mormon doctrine applies even in the absence of an alternative remedy contract. The Illinois Supreme Court has effectively overturned Ferenczak, and that decision has actually been applied in appellate courts as well. In 1541, North Bosworth Condo Association v. Hanna Architects, Inc., the court held, and that's 2021 LAP 1st 200594, the court held that the satisfied homeowners may not resort to tort law for readjusting against the architect, even with an adequate project. I see my time is out, Your Honor, so, excuse me, Justices, unless you have any quotes. May I briefly conclude? Go right ahead.  Yes, sir. KAP Architect asks this court to affirm the trial court's decision and dismiss DCA's claims against it. Thank you. Thank you. First, I'd like to note that the developer, Mr. Schmidt's argument, pointed out that the, argued that the trial court did not express any compulsion or hesitancy to overturn Hopkins v. Hartman. However, the court's opinion on June 5th of 24 expressly stated, quote, absent guidance from higher courts that the judicially created doctrine of implied warranty of habitability applies to a non-resident corporation that purchases a $46 million, 111-unit building. This court declines to further abrogate the common law doctrine, a caveat emptor. That's on pages 9, 13, and 19 of the June 5th, 24 opinion at pages C, 1188, 1192, and 1198. The court expressly said that it was, he was hesitant to not apply this unless, absent guidance from the higher courts. And on page 9 of that same opinion, it said that it felt constrained to apply it because it, quote, has never been overruled. So I would suggest that under these circumstances, Hopkins v. Hartman does not apply, certainly doesn't apply to our case, and that's really, I guess, as far as we're asking the court to go. In particular, Mr. Schmitz suggested that the defects in that case were latent defects, not discoverable. However, the Hartman opinion explains that there was an, at the time of purchase, there was an absence of ventilators, inadequate number of vents in the crawl space, that the insulation was installed upside down, that there was a vapor barrier that was installed below the insulation instead of above, that there was sagging and collapsing floor and rotting main supports. At the time of the purchase. That was, that's not a latent defect. So I would, the plaintiff suggests that Hopkins v. Hartman was wrongly decided, but at the very least, it's completely distinguishable and inapposite to our case, where the defects were totally latent and there was no way to have discovered these. We had, as we alleged, we had an inspection that did not discover them. We would have had to tear off the roof to even find these circumstances. It was not an absence of vents, as Mr. Schmitz suggested. Rather, the entire attic space was filled to the rim with ventilation, and there was no vapor barrier. That's a basic contractor no-no. That always, in houses, in commercial buildings, it always results in moisture and mold. And that we had to replace the entire roof. Quickly, Mr. Schuchas for the builder, Ron Russo said that we had alleged they followed the plans. We have explained in our, that that were developed by the architect. The builder contracted with the architect, not the owner, as is always the case. And the cases they cited are based on the principle that if a builder contractor follows plans provided by the owner. Every one of the cases they cite said plans provided by the owner. That didn't happen here. They went out and got their own architectural plans. And so those cases are completely inapplicable. And we've cited extensive legal authority in support of the proposition that a contractor has a duty, pursuant to the implied warranty of good workmanship, to assess the sufficiency and soundness of architectural plans, to seek clarification from the architect if there are problems, and to warn the owner of any defects in the plans. That's Illinois law. And it absolutely supports an implied warranty of workmanlike construction here. And then lastly, Mr. Fetterman for the Architect KAP was pointing to the thin authority supporting a warranty of reasonable judgment. There is extensive case law, which we've cited to the court, making it clear that an architect has a standard of care and is liable in negligence if it fails to follow the standard of care. The plaintiff contends that it supports cause of action for implied warranty. Under the circumstances, there is no case law that says there is no implied warranty. We call the specifications reasonable judgment, skill, and care, as the case law talks about. There is clearly such a duty, and Mr. Fetterman referred to the Sphere of Induction, which recognizes a similar warrant, an implied warranty, in a slightly different context that protects the contractor. We suggest that these cases support an implied warranty that's made by an architect that protects the owner of the building. When you first began your rebuttal, you cited to a case. Could you give that side again? I cited, I believe, to the trial court's opinion, where it said absent guidance from higher courts. I thought you said there was a Supreme Court case. I thought I was just rewriting something that maybe you were citing to the trial court. I was right about the trial court. Okay, my mistake. I'm sorry. Thank you. Thank you very much. No questions. Thank you. Thank you, counsel. Thank you. Obviously, we'll take a matter under advisement. We will issue an order in due course.